

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE J. FORGUES<br><br>Plaintiff,<br><br>vs.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendant, | Case No. 1:15-cv-1670<br><br>Hon. Judge James Gwin |

**PLAINTIFF'S OPPOSITION TO
MOTION OF DEFENDANT SELECT PORTFOLIO SERVICING, INC.
TO DISMISS PLAINTIFF'S COMPLAINT**

Unrepresented Plaintiff and consumer Christine J. Forgues respectfully submits this her timely opposition to Defendant SPS's Rule 12(b)(6) motion to dismiss Plaintiff's verified complaint. Defendant's motion is improper, untimely, in contempt of this Court's order requiring the filing of an answer, and should be denied for the reasons set forth in the accompanying Memorandum and two attached CFPB briefs.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The motion of Defendant SELECT PORTFOLIO SERVICES, INC. ("SPS") to dismiss Plaintiff's <u>verified</u> complaint under Rule 12(b)(6) should be denied as an untimely and improper response to both Plaintiff's <u>verified</u> claims and in contempt of this Court's order. The Rule 12(b) motion is a dispositive motion to which Plaintiff has 30 days to file a response. LR 7.1(d).

Defendant's motion violates Fed. R. Civ. P. 11(b) in that the motion is presented for an improper purpose to further harass Consumer-Plaintiff, cause her unnecessary delay, and needlessly <u>increase her cost</u> of litigation in both her time and resources, causing her prejudice and further damages. The only proper response was a verified answer as required by Federal Rule of Civil Procedure 11(a) coupled with Plaintiff's unanswered notices to Defendant under 15 U.S.C. § 1692g to ***obtain verification*** of the debt from the original creditor. See Complaint. Rule 11(a) provides in relevant part that, "Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit." 15 U.S.C. § 1692g is a statute that specifically states otherwise and this action is enforcement of Plaintiff's private right of action under that statute to obtain verification of the debt from the debt collector.

SPS requested an additional 21 days in order to "make an appropriate response" to Plaintiff's verified complaint. See Dkt. No. 5. On 09/14/2015, the Court issued the following Text Only Order (emphasis added):

> Order [non-document] entered by Judge James S. Gwin on 9/14/15 granting Defendant's motion for extension of time until 10/5/15 to file an answer to the Complaint. **The Court requires the filing of an answer**.

On 10/5/2015 Defendant filed a motion to dismiss (SPS's "motion") for failure to state a claim. Defendant had 21 days to file a pre-answer motion. The Court in its discretion granted an extension of time—to file an <u>answer</u>. Ordinarily a Rule 12 motion extends the time to file an

1

answer, but that time already expired. Defendant is now in default of an answer and its motion is untimely and improper. The motion should be denied on those bases alone.

Notwithstanding the motion's untimeliness and impropriety, *<u>the Court need go no further than the first paragraph of SPS's entire Memorandum to witness SPS's formal confession by its attorney that it is masquerading as a creditor as averred in Plaintiff's Verified Complaint</u>* at ¶11 and 13, and that Plaintiff's verified facts about SPS's conduct and behavior are sufficient to state a plausible claim, to wit: Defendant's motion relies upon several exhibits from its state-court action against this consumer. Plaintiff's FDCPA and FCRA claims do not depend on a state-court action. SPS's exhibits only serve to show how so-far successful SPS has been in its self-described "standard collection and credit reporting activity" in that "there is a state court <u>judgment</u> in favor of the <u>creditor</u> on the <u>loan</u> entering judgment on the <u>underlying note</u> and ordering <u>foreclosure of the mortgage</u>." Dkt. No. 8 at 1. (Emphasis added.) SPS's motion is a formal admission by its attorneys that sets its violation of the FDCPA/FCRA in cement.

Additionally, the motion itself is deceptive and misleading to a least sophisticated consumer in furtherance of SPS's collection of the debt for which attorneys David A. Wallace, Karen M. Cadieux, and Carpenter Lipps & Leland LLP may be held liable under the FDCPA.

The exhibits also show how difficult it is for a trusting, unsophisticated consumer to cope with[1] such sophisticated, deceptive collection efforts by debt collector SPS in state court: SPS's attorney <u>frivolously</u> touts a state court judgment in an attempt to claim "res judicata" as if the merits of Plaintiff's federal FDCPA/FCRA claims were or should have been brought and decided in state court. No court has considered the merits of Plaintiff's claims; thus, res judicata cannot

---

[1] The order denying <u>unopposed</u> Ohio Civ.R. 60(B)(4) relief sought from the state-court judgment, represented by Defendant's Exhibit 8, is now appealed to the Eighth District Court of Appeals, Cuyahoga County, Ohio.

preclude Plaintiff from asserting them. Defendant cannot possibly meet its burden of pleading and proving res judicata. It is futile. SPS cannot use its state court judgment as a shield to deflect strict liability under the remedial and controlling FDCPA/FCRA. Firstly, 15 U.S.C. § 1692a(5) defines the alleged debt SPS is attempting to collect:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, **whether or not such obligation has been reduced to judgment**.

(Emphasis added.) Therefore, SPS's defense is frivolous because it cannot be supported in law or fact.

> Moreover, a principle advanced in Ohio case law, that "[t]he binding effect of res judicata has been held not to apply when fairness and justice would not support it," Builders Dev. Group, L.L.C., v. Smith, No. 23846, 2010 WL 3448574, at *3 (Ohio Ct. App. Sept. 3, 2010) (alteration in original and citations omitted), compels us to find that res judicata does not apply to Boggs's and Rachid's claims. Even assuming that Ohio law treats Boggs's and Rachid's failure to appeal as triggering the application of res judicata--as the City argues--their claims have never been decided on the merits, and "[u]nder [such] circumstances, rigid application of res judicata would defeat the ends of justice." 2010 WL 3448574, at *3-4 (discussing situations where application of res judicata is manifestly unjust).

State of Ohio Ex Rel. Susan Boggs v. City of Cleveland, No. 09-4403 (6th Cir. 2011).

Secondly, the Sixth Circuit Court of Appeals denies a legal conclusion that SPS can be both a creditor in state court and a debt collector[2] in federal court as to the debt it is attempting to collect:

> We note, as other circuits have, that **"as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."** FTC v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007) (citing Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003)); cf. Montgomery v. Huntington Bank, 346 F.3d 693,

---

[2] SPS does not argue that it is *not* a debt collector under FDCPA.

3

> 698 (6th Cir. 2003) (holding the definition of debt collector "does not include the consumer's creditors"). If an entity which acquires a debt and seeks to collect it cannot be both a creditor and a debt collector, can it be neither? We answer no. To allow such an entity to define itself out of either category would mean that the intended protection of the FDCPA is unavailable. Both the statutory language and legislative history of the FDCPA establish that such an entity is either a creditor or a debt collector and its collection activities are covered under the FDCPA accordingly.

*Bridge v. Ocwen*, No. 09-4220, (6th Cir. 2012).

Although the fact of Plaintiff's TILA rescission goes to the legitimacy of the debt, the centerpiece of Plaintiff's claim is SPS's conduct and behavior, not a TILA rescission or state-court action the Defendant calls a "foreclosure." Defendant's attorney should know that this is not a foreclosure or an extension of a foreclosure. It is not a TILA claim. This is a federal FDCPA/FCRA claim under 15 U.S.C. §§ 1692k, 1681p. Plaintiff avers in her verified complaint at ¶¶ 11 and 13 that:

> 11. Defendant SPS is a debt collector masquerading as a creditor and lender, furnishing information to <u>credit</u> reporting agencies without being an actual <u>creditor</u>[3], without a lawful <u>account</u>[4] to report and without express consent of Plaintiff, and is in the process of collecting another person's alleged debt acquired after alleged default by seizing property rightfully belonging to the Plaintiff that has nothing to do with a 1692a(5) debt. Purchasing evidence of an alleged debt does not allow a debt collector to behave like a creditor.

> 13. Defendant, by repeatedly using creditor language in outright conflict with debt collection, made materially false, misleading, deceptive statements that would lead a least sophisticated consumer to believe that they were dealing with a creditor when in fact no creditor was involved, and that there was a security interest when in fact there was no security interest involved.

---

[3] 15 U.S. Code § 1691a - Definitions; rules of construction. (e) The term "creditor" means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

[4] 15 U.S. Code § 1693a – Definitions. (2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602 (i) [1] of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.

4

Importantly, as Plaintiff averred at ¶10, SPS agrees that it acquired its purported interest in the alleged debt while the debt was in default where Defendant's Memo on page 2 states that the "state court magistrate found that Forgues owed $142,144.25, plus interest at 9.8% <u>from October 1, 2009</u>" and that "the Mortgage was assigned to Deutsche Bank on <u>May 14, 2010</u>." Also, SPS argues that the Notice of Assignment, Sale or Transfer of Servicing Rights was originally mailed on <u>May 23, 2013</u>,[5] which is more than three years after October 1, 2009.[6]

Plaintiff's sworn facts based on personal knowledge, which Defendant mischaracterizes as "allegations," do not require that this Court find that she rescinded her mortgage; but such facts do state a plausible claim for relief as to sections 1692c, 1692d, 1692e, 1692f, 1692g, 1692j and 1681s-2(b) as this consumer's private right of action. Whether Defendant doesn't think Plaintiff stated a claim on one or two facts, or that one violation is not enough to create liability doesn't matter. The facts are not disputed by SPS's motion based on hearsay arguments that are unavailing and have no probative value, such as exactly how many times SPS called, or that SPS cannot be liable under 1681s-2(a) for reporting information to credit reporting agencies when <u>it is already liable under § 1692e(8)</u> as claimed—which is not even addressed in its motion. How many times in the past year is reasonable under FDCPA for a debt collector masquerading as a creditor to willfully harass and abuse this consumer, or willfully report on her credit report without a lawful "account" or the consent of this consumer as averred? None. Exactly how many times can a debt collector willfully ignore this consumer's private right of action requiring Defendant to obtain verification from the original creditor under 1692g and to provide

---

[5] SPS's Notice dated 05/23/2013 (Defendant's Exhibit 9) was mailed to consumer in a communication dated April 29, 2015 together with Exhibit B dated 14 May 2010, within the past year, and shows by the enclosures that SPS was misleading Plaintiff into believing that SPS was a creditor.

[6] SPS's defense, middle of page 14, for sending this notice originally mailed on May 23, 2013 and again on April 29, 2015 is that the notice is required to be sent under RESPA. This is more proof of debt collector SPS masquerading as a creditor creating the false belief in the Plaintiff that an interest in her real estate is involved.

5

information needed to adequately dispute the debt? None. Defendant's willfully ignorant position, SPS's Memo at 13, is that "Forgues' notices of dispute were sent well outside the 30-day period required under 15 U.S.C. § 1692g and SPS had no duty to respond." For mandatory judicial notice, the attached <u>Brief of Amicus Curiae Consumer Financial Protection Bureau,</u> *Bock v. Pressler & Pressler, LLP*, 3d. Cir., No. 15-1056 Doc. 003112044301, Page 38, filed 08/13/2015, provides:

> Finally, Pressler also errs in contending (at 46) that it was entitled "to assume that the claim against Bock was valid" because Bock did not respond to the initial letter that Pressler sent him. **There could be any number of reasons why a consumer would not respond—for example, because mail is not delivered or opened, or because the consumer is too busy or unsophisticated to respond in time. It is therefore not reasonable to assume that a debt is valid just because a consumer does not respond.**
>
> Nor does §1692g give attorney debt collectors a right to assume a debt's validity. Section 1692g requires debt collectors, upon first contacting a consumer, to provide a notice with certain information about the debt and the consumer's rights, including the right to dispute the debt within thirty days. See 15 U.S.C. § 1692g(a). That notice advises that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." Id. § 1692g(a)(3). But, contrary to Pressler's contention, **this provision only gives consumers a right to receive this notice; it does not give debt collectors any right to assume a debt's validity** Cf. CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 670 (2012) (explaining that "[t]he only ... right [that similar disclosure provision in another consumer-protection statute] creates is the right to receive the statement, which is meant to describe the ... protections that the law elsewhere provides" (emphases in original)). Nor does any other FDCPA provision give debt collectors that right[.]

(Emphasis added.) Further, the attached <u>Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission,</u> *Hernandez v. Williams, Zinman & Parham, P.C.*, 9th Cir., No. 14-15672, Dkt. No. 14, Page 12 of 42, filed 08/20/2014, provides:

> If the consumer disputes the debt in writing within thirty days of receiving such a notice, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt" and mails the consumer a copy of that verification. Id. § 1692g(b). By the same

6

token, if the consumer makes a written request for the name and address of the original creditor within that thirty-day period, **the collector must cease collection efforts until it sends the consumer that information.** Id. Congress explained that this validation requirement was a "significant feature" of the law that aimed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977).

3. To ensure compliance, the FDCPA gives consumers a private right of action to sue for violations of the law and to recover actual and statutory damages as well as attorneys' fees. 15 U.S.C. § 1692k(a). The Act also authorizes the Bureau, the Commission, and several other agencies to enforce its requirements. Id. §§ 1692l(a), (b).

(Emphasis added.)[7]

CFPB Director Richard Cordray has said, "Consumers have the right to expect that they will be told the truth and treated fairly." So, Plaintiff is here for ratification and enforcement of her private right of action under 1692k. SPS has already waived all affirmative defenses—if SPS had responded, it could have avoided this federal action. Plaintiff's property is still being affected and SPS is still under an unanswered Notice of Dispute. SPS willfully will not answer this consumer outside of court and it will not answer Plaintiff in this Court despite the Court's order to do so. Because of Defendant SPS's record of willfulness in conducting its violative "standard collection and credit reporting activity," Plaintiff should be awarded the full amount of costs[8], damages, and punitive damages to which she is entitled.

In conclusion, SPS's motion should be denied in its entirety as improper, untimely, in contempt of this Court's order, frivolous, and without merit and, if the Court deems it just, SPS

---

[7] Congress vested authority for administering the FDCPA in the CFPB, which is empowered not only to enforce the Act, but also to promulgate regulations and to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); see also 12 U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of federal consumer financial law). Its interpretation of the Act is therefore entitled to deference. Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, *Hernandez v. Williams, Zinman & Parham, P.C.*, No. 14-15672, 9th Cir., DktEntry 14, filed 08/20/2014 at page 36 of 42.

[8] 15 U.S.C. § 1692k(3): in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

should be directed to serve its verified answer so this case can move forward to judgment without further delay. Without service of SPS's answer, the Case Management Conference scheduled for November 30, 2015 is premature.

Plaintiff received assistance in the preparation of this document from members of a strictly private membership association (PMA) by the sharing of information, through her Archbishop, by virtue of private membership in the fellowship.

Respectfully submitted,

*Christine J Forgues* 11-2-15

/s/ Christine J. Forgues
Christine J. Forgues
Consumer-Plaintiff.

## PROOF OF SERVICE

A copy of the foregoing PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT SELECT PORTFOLIO SERVICING, INC. TO DISMISS PLAINTIFF'S COMPLAINT has been sent by Regular U.S. Mail, First Class, postage prepaid, this 2nd day of November, 2015, to the following:

CARPENTER LIPPS & LELAND LLP
Attention: David A. Wallace
280 North High Street
Columbus, Ohio 43215

*Christine J. Forgues*
Christine J. Forgues, Consumer-Plaintiff
15109 Merrimeade Drive
Cleveland, OH 44111

11-2-15

1