UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                            :
CHRISTINE J. FORGUES,                       :
                                            :   CASE NO. 1:15-CV-1670
        Plaintiff,                          :
                                            :
v.                                          :   OPINION & ORDER
                                            :   [Resolving Doc. 8]
SELECT PORTFOLIO SERVICING,                 :
                                            :
        Defendant.                          :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Christine Forgues brings this suit against Defendant Select Portfolio Servicing ("SPS") alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") relating to the mortgage debt on her residence.[1] The mortgage has been foreclosed in a state foreclosure proceedings. SPS moves to dismiss, putting forward two lines of argument.[2] First, to the extent Plaintiff's complaint depends on a finding that she rescinded the underlying mortgage in 2010, such a conclusion is barred by the preclusive effect of the state proceeding. Second, to the extent Plaintiff's complaint alleges other FDCPA and FCRA violations those claims are not plausibly pled. For the following reasons, the Court grants Defendant's motion in part and denies it in part.

**I. Background**

---

[1] Doc. 1.
[2] Doc. 8. Plaintiff opposed. Doc. 9. Defendant filed a reply. Doc. 15.

Case No. 1:15-CV-01670
Gwin, J.

On March 23, 2007, Plaintiff Forgues, with her late husband, entered into a $144,440 mortgage loan with Chase Bank USA, N.A. ("Chase") for their primary residence in Cleveland, Ohio.[3] Forgues and her husband signed the Note that promised to repay the loan, and executed a Mortgage securing the promise to repay.[4] The Forgueses went into default in 2009.[5]

The Truth in Lending Act ("TILA") generally gives borrowers a right to rescind mortgage notes. Generally, the right to rescind must be exercised within three days of the note and mortgage signing. If, however, the lender failed to satisfy the Act's mortgage disclosure requirements, that period of time is extended for up to three years.[6]

Plaintiff states that "On January 7, 2010, within three years of the transaction date, Plaintiff mailed Chase a 'TILA Notice of Rescission,' signed by the Forgueses, providing written notice of their intention to immediately rescind the transaction pursuant to 15 U.S.C. §§ 1635(a) and (f)."[7] Plaintiff contends that her mortgage debt is now invalid based on the January 7, 2010 mailing. In arguing that the mortgage debt has been rescinded, Plaintiff necessarily must show that her lender failed to satisfy the Act's disclosure requirements.

Neither Chase nor any other bank or servicer responded to the Notice of Rescission. Plaintiff alleges that she and her husband sent the January 7, 2010, recision letter but Plaintiff produces no copy or other proof of the recision letter. Neither Plaintiff nor Defendant has found a copy of the notice at this point in the litigation.

Both the Mortgage and the Note were subsequently assigned to Deutsche Bank National

---

[3] Doc. 1 at ¶ 15.
[4] Doc. 8 at 1.
[5] Doc. 1-2.
[6] See generally Jesinoski v. Countrywide Home Loans, Inc., ___ U.S. ___, 135 S.Ct. 790 (2015).
[7] Doc. 1 at ¶ 16.

Case No. 1:15-CV-01670
Gwin, J.

Trust Company ("Deutsche Bank") in its role as trustee for an asset-backed security.[8]

Deutsche Bank filed a state court foreclosure action on March 29, 2012 in the Cuyahoga County Court of Common Pleas. Although Forgues was apparently aware of the proceeding and involved in a mediation process, Forgues never filed an answer.[9] The state court entered a default judgment on February 12, 2013.[10] On April 12, 2013, the state court magistrate issued a judgment decree in foreclosure.[11] Forgues never filed an objection.[12] The state court trial judge adopted the decree as the final judgment of the state court.[13] Forgues did not appeal the judgment.[14]

Two years later, on June 30, 2015, Forgues submitted a motion to set aside the default judgment, arguing that her debt was invalid under TILA's three-year rescission window.[15] The state court found that Forgues had not timely raised the motion, and declined any merits review.[16]

Forgues now brings this claim in federal court, alleging a myriad of claims under the Fair Debt Collection Practices Act and Fair Credit Reporting Act. Defendant SPS moves to dismiss. Defendant argues that Plaintiff's rescission claims are barred by res judicata. Moreover, Defendant contends that even if the rescission claims were not barred, they would still fail as a matter of law because Plaintiff has not alleged that she failed to receive any TILA disclosures. Defendant also argues that Plaintiff's other substantive FDCPA and FCRA claims must be dismissed.

---

[8] Doc. 8 at 2.
[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] Id. at 3.
[14] Id.
[15] Id.
[16] Id. This order has now been appealed to the Eighth District Court of Appeals, Cuyahoga County, Ohio. Doc. 9 at 2 n.1. The Court has been unable to find any allegations in the state court record that Chase failed to make proper TILA disclosures at the time of closing.

Case No. 1:15-CV-01670
Gwin, J.

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[17] The plausibility requirement is not a "probability requirement."[18] The Plaintiff need not try to prove his case in the complaint. But there must be "more than a sheer possibility that the defendant has acted unlawfully."[19]

Federal Rule of Civil Procedure 8 provides the general pleading standard and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief."[20] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[21] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true.[22]

## III. Discussion

*A. Preliminary Issues*

As an initial matter, the Court agrees with Defendant SPS that its motion to dismiss is timely. On September 10, 2015, SPS moved for additional time in which to "answer, move or otherwise

---

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[18] *Id.*
[19] *Id.*
[20] Fed. R. Civ. P. 8(a)(2).
[21] *Iqbal,* 556 U.S. at 678-79 (citations omitted).
[22] *Id.*

-4-

Case No. 1:15-CV-01670
Gwin, J.

plead in response to Plaintiff's Complaint."[23] The Court granted that motion.[24] This motion was filed by the new October 5, 2015 deadline.

Moreover, the Court agrees that this motion to dismiss was not filed to unduly harass or abuse Plaintiff. Plaintiff has brought this litigation, and must be prepared for Defendant to defend against her allegations. A motion to dismiss of this nature is standard.

Finally, the Court agrees with SPS that SPS was not required to file a verified answer. Plaintiff has not identified any language in the FDCPA or FCRA that requires a verified answer.

### B. Res Judicata

The more pressing threshold issue is whether Plaintiff can raise claims that depend on finding that Plaintiff's 2010 TILA Rescission letter may have rescinded her mortgage. The Court holds that the rescission-based claims are barred by res judicata. Moreover, even if the Court could review the merits, the Court would dismiss these claims. Plaintiff has not pled the minimum facts necessary to find that the 2010 letter could have acted as a rescission.

The doctrine of res judicata precludes parties from relitigating claims that were or should have been raised in prior proceedings. "Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion . . . and issue preclusion."[25] Defendant asserts a defense of claim preclusion in this case. Claim preclusion provides that "valid, final judgment rendered upon

---

[23]/Doc. 5.
[24]/Non-document docket entry dated September 14, 2015. Defendant's correctly understood that by granting Defendant's motion, the Defendant's wording controlled. Defendant was granted an extension until October 5, 2015 to file an answer or other responsive paper.
[25]/*Ohio* ex rel. *Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir.2011) (citations and internal quotation marks omitted).

Case No. 1:15-CV-01670
Gwin, J.

the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."[26]

In claim preclusion analysis, a federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered."[27]  "Ohio case law expressly recognizes that [a] default judgment is a valid and final judgment upon the merits, and it can be, therefore, a proper bar to later claims for purposes of claim preclusion."[28]

The general rule is that a change in law does not eliminate the preclusive effect of prior actions.[29]  Nevertheless, claim preclusion is not "rigidly applied."[30]  "Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice."[31]

Plaintiff's arguments as to rescission of her mortgage are barred by claim preclusion.  The state foreclosure proceeding default judgment is a final decision on the merits of the foreclosure case.  The foreclosure litigation involved the same parties as in this litigation.[32]  The question of rescission could have been raised as a defense to the foreclosure action.[33]  Indeed, in moving to vacate the

---

[26]*Grava v. Parkman Twp.*, 653 N.E.2d 226 (Ohio 1995).
[27]*Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007).
[28]*Frazier v. Matrix Acquisitions, LLC*, 873 F. Supp. 2d 897, 901 (N.D. Ohio 2012) (citations and internal quotation marks omitted).
[29]*See Harrington v. Vandalia-Vutler Bd. of Ed.*, 649 F.2d 434, 438-39 (6th Cir. 1981) (finding that a recent Supreme Court holding which allowed for previously-unavailable Section 1983 liability did not preclude the application of res judicata to a decision made under the old doctrine).
[30]*Id*.
[31]*Id*. (quoting *Tipler v. E.I. Du Pont de Nemours and Co.*, 443 F.3d 125, 128 (9th Cir. 1971)).
[32]Deutsche Bank National Trust Company, as owner of the note, was the named plaintiff in the foreclosure action.  However, SPS "was the servicing agent on behalf of [Deutsche Bank] in the state foreclosure action and was involved in prosecuting the state foreclosure."  Doc. 8 at 7-8.
[33]It is of no moment that the question of rescission should have been a defense in the prior action and is now part of an affirmative claim in the instant litigation.  The claim preclusion doctrine applies in these cases as well.  *See Frazier*, 873 F. Supp. 2d at 902-03 ("The two alleged bases for Frazier's current complaint . . . should both have been brought as defenses in the debt collection action.").

-6-

Case No. 1:15-CV-01670
Gwin, J.

default judgment, Plaintiff did argue that the mortgage had been rescinded. Nevertheless, that motion was denied and the default judgment stands, precluding this court from relitigating the question of whether the 2010 letter rescinded the mortgage.[34]

Plaintiff points out that after the state court issued the default judgment, the Supreme Court issued a decision in *Jesinoski v. Countrywide Home Loans*.[35] *Jesinoski* held that rescission under TILA only required written notice during the three-year period, rather than filing suit for rescission. Plaintiff states that *Jesinoski* is an "intervening, discrete, and controlling event as to the transaction."[36] However, intervening changes in law do not automatically reverse the preclusive effect of earlier decisions.

Even in turning to broader arguments as to "public policy" or "manifest injustice," Plaintiff's arguments do not win. First, her motion to vacate the default judgment is still on appeal at the state court level. This militates against intervening in the already-decided issues in the case. Second, Plaintiff has not pled the necessary facts to show that *Jesinoski* has any controlling effect on her case. In particular, Plaintiff has not alleged that any TILA disclosures were missing when the Forgueses closed the mortgage. If there were no missing TILA disclosures, then Plaintiff and her late husband only had three days—not three years—to send a notice of rescission.

As a result, the Court **GRANTS** summary judgment as to Plaintiff's FDCPA and FCRA

---

[34]/The Forgues' pending appeal in the Ohio Court of Appeals dose not alter this analysis. "It is well-settled that the pendency of an appeal does not prevent the judgment's effect as res judicata in a subsequent action." *Cully v. Lutheran Medical Center, 523 N.E. 2d 531, 532 (Ct. App. Ohio 1987)*.
[35]/ __ U.S. __ 135 S. Ct. 790 (2015)
[36]/Doc. 1 at 27.

Case No. 1:15-CV-01670
Gwin, J.

claims that depend on a finding that the underlying mortgage was rescinded.[37]

### C. Fair Debt Collection Practices Act

Plaintiff also alleges claims under the Fair Debt Collection Practices Act and Fair Credit Reporting Act that do not depend on finding that her mortgage may have been rescinded.

The FDCPA was enacted "to eliminate abusive debt collection by debt collectors."[38]

Under the statute, the term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for persona, family, or household purposes, whether or not such obligation has been reduced to judgment."[39] The parties do not dispute that this includes Plaintiff's mortgage and the foreclosure judgment.

The FDCPA covers certain third-party debt collectors, as opposed to creditors who originated the debt.[40] A mortgage servicer is a debt collector under the FDCPA if the debt was in default at the

---

[37]This includes the following three claims. First is Plaintiff's claim as to false, deceptive, or misleading representations in violation of § 1692e(2). Plaintiff states in her complaint that "[i]n light of the TILA Notice of Rescission, by demanding any amount, Defendant violated 15 U.S.C. § 1692e(2)." Doc. 1 at ¶ 69. Second is Plaintiff's claim as to unfair collection practices in violation of § 1692f. Plaintiff states in her complaint that "Defendant violated § 1692f(1) by attempting to collect any amount, because no amount is expressly authorized by agreement. Plaintiff has not agreement with SPS or the REMIC, who are both strangers to TILA Notice of Rescission." *Id.* at ¶ 77. And third is Plaintiff's claim that SPS took deceptive or misleading actions by not communicating that the mortgage debt was in dispute in violation of § 1692e(8). *Id.* at 72. As described below in the section the Fair Credit Reporting Act, the alleged TILA Rescission is the basis for the disputed debt. There is no cause of action under the FDCPA for failing to report a meritless dispute.

[38]15 U.S.C. 1692(e).
[39]15 U.S.C. 1692a(5).
[40]15 U.S.C. 1692(a)(2) (As relevant for this case, a "debt collector" is "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. This term does not include . . . (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person.").

-8-

Case No. 1:15-CV-01670
Gwin, J.

time the servicing rights were assigned.[41] SPS has not disputed that it is a debt collector under the FDCPA.

An FDCPA debt collector is prohibited from taking particular actions while collecting on a debt covered under the statute.

### I. Section 1692c

Under 15 U.S.C. § 1692c, a debt collector may not communicate with a consumer at "a time or place known or which should be known to be inconvenient to the consumer."

Plaintiff alleges that she "warned SPS not to call her" between 8:00 a.m. and 9:15 a.m.[42] Plaintiff alleges that despite this warning "SPS repeatedly called" during this time frame.[43] Defendant contends that these statements are insufficient to plausibly state a claim for relief under Section 1692c. However, Plaintiff is not required to specify every detail of her claim at this stage. She has met the pleading requirements by alleging that SPS should have known that this period of time was "inconvenient" and yet nevertheless persisted in calling her.

The Court **DENIES** Defendant's motion as to this claim.

### ii. Section 1692d

Under 15 U.S.C. § 1692d, "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection

---

[41]/*See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996); *Ogle v. BAC Home Loans Servicing LP.*, 924 F. Supp. 2d 902, 910 (S.D. Ohio 2013).
[42]/Doc. 1 at ¶¶ 40, 64.
[43]/*Id.*

Case No. 1:15-CV-01670
Gwin, J.

of a debt."

Plaintiff alleges that SPS called Plaintiff "numerous" times, calling "repeatedly or continuously for no purpose or intent other than to annoy, abuse, or harass."[44] In opposing this argument, Defendant cites to case law from district courts in other circuits holding that generalized use of the word "numerous" is insufficient to state a claim under Section 1692d.[45] This is not so. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[46] Plaintiff has sufficiently satisfied this standard by identifying the repeated and continuous phone calls.[47]

The Court **DENIES** Defendant's motion as to this claim.

### iii. Section 1692e(10)

Under 15 U.S.C. 1692e(10), a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff alleges that SPS violated this section by communicating that Plaintiff may be eligible for a "loan modification" and then suggesting "Deed in Lieu of Foreclosure" instead.[48] Plaintiff in particular seems to complain that SPS did not have the right to communicate these

---

[44] *Id.* at ¶¶ 38-40, 66.
[45] Doc. 8 at 11-12.
[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).
[47] *See also Bridge v. Ocwen Federal Bank*, 681 F.3d 355, 363 (6th Cir. 2012) (stating in dicta that a complaint with comparable levels of specificity was sufficient to state a plausible claim for relief under § 1692d).
[48] Doc. 1 at ¶ 71.

-10-

Case No. 1:15-CV-01670
Gwin, J.

options as it was neither a lender or a creditor.[49] Plaintiff's allegations are not sufficient to state a plausible claim for relief under § 1692e(10). SPS is within its rights as a mortgage servicer to offer loan modifications and other alternatives to foreclosure.[50]

The Court **GRANTS** Defendant's motion as to this claim.

      iv. Section 1692g

Under 15 U.S.C. 1692g, a debt collector's initial communications with a consumer must state that the consumer has a thirty-day period in which to demand verification of the debt. "If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment."[51]

Plaintiff alleges that SPS violated in this provision by failing to validate the debt. Plaintiff states that she has issued four notices of dispute: March 6, 2015, April 1, 2015, June 2, 2015, and August 7, 2015.[52] Plaintiff alleges that none of these have been answered to her satisfaction. However, SPS's initial communication with Plaintiff was as early as May 2013.[53] Plaintiff's requests seeking validation are well outside of the thirty-day window and are no longer viable.

The Court **GRANTS** Defendant's motion as to this claim.

---

[49] *Id.*

[50] Plaintiff also complains that SPS is improperly acting as a creditor by reporting the debt to credit reporting agencies, and that it uses "creditor speak" by "using the terms 'mortgage,' 'loan,' [and] 'foreclosure' not found in the FDCPA." *See, e.g.,* Doc. 1 at ¶¶ 11, 32, 68. These actions are not violations of the FDCPA or FCRA. As described below, a servicer such as SPS can properly furnish information to a credit reporting agency so long as it follows the requirements of the FCRA. Moreover, Plaintiff has not identified any source of law that prohibits a debt collector from describing a debt more specifically as a mortgage, loan, or foreclosure.

[51] 15 U.S.C. 1692g(b).
[52] Doc. 1 at ¶¶ 22, 31, 45, 55.
[53] *Id.* at ¶ 91; Doc. 1-2.

-11-

Case No. 1:15-CV-01670
Gwin, J.

> v. Section 1692j

Under 15 U.S.C. § 1692j, a debt collector may not, "design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor." A consumer has one year from the date of violation to bring a claim.[54]

Plaintiff alleges that a form sent by SPS on May 23, 2013 violated § 1692j.[55] The form was a notice required under the Real Estate Settlement Procedures Act ("RESPA"). The May 23, 2013 form was intended to inform Plaintiff that SPS was the new servicer on her loan.[56] Because this complaint was filed almost two years after the notice was sent, the claim is time barred under the one-year statute of limitations. Even if this were not the case, Defendant makes a strong argument that this form cannot be in violation of the FDCPA as it is required under another statute.

The Court **GRANTS** Defendant's motion as to this claim.

> D. Fair Credit Reporting Act

The Fair Credit Reporting Act exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."[57] Under the FCRA, an entity which furnishes credit to one of the credit rating agencies ("CRAs") must ensure that a consumer's credit report accurately reflects the debts owed.

---

[54] 15 U.S.C. § 1692k.
[55] Doc. 1 at ¶ 91; Doc. 1-2.
[56] Doc. 8 at 14.
[57] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

Case No. 1:15-CV-01670
Gwin, J.

### I. Section 1681s-2(a)

Under 15 U.S.C. § 1681s-2(a) a credit furnisher has a duty to provide accurate information to the credit reporting agencies. In particular, a furnisher "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."[58] However, this section does not give rise to a private right of action.[59]

Plaintiff alleges that Defendant violated Section 1681s-2(a) "by furnishing information to CRAs without notice that such information is disputed by the consumer." Because there is no private right of action under this portion of the statute, Plaintiff's claim must be dismissed.

The Court **GRANTS** Defendant's motion as to this claim.

### ii. Section 1681s-2(b): Reasonable Investigation

15 U.S.C. § 1681s-2(b) imposes additional duties on furnishers of credit information. These obligations are triggered only when the furnisher receives "notice of dispute" from a credit reporting agency itself.[60] After receiving a notice of dispute, the furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished

---

[58] 15 U.S.C. § 1681s-2(a).
[59] *See Bach v. First Union Nat. Bank*, 149 Fed. App'x. 354, 158 (6th Cir. 2005).
[60] 15 U.S.C. § 1681s-2(b).

Case No. 1:15-CV-01670
Gwin, J.

> the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.[61]

The FCRA allows a private right of action for willful or negligent noncompliance with its requirements.[62]

After notification from a credit reporting agency, a furnisher's investigation into a disputed debt must be reasonable.[63] "Reasonableness" is not a fixed standard; rather, "how thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute."[64]

Plaintiff alleges that Defendant received notices from the three credit reporting agencies, triggering the obligations under § 1681s-2(b).[65] Plaintiff further alleges that in disputing the mortgage debt with the credit reporting agencies, she specifically stated that the debt was not hers.[66] She also stated that the mortgage had been rescinded by virtue of the alleged 2010 TILA Notice of Rescission.[67] The credit reporting agency responded that SPS had verified the debt.[68]

---

[61] *Id.*
[62] *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).
[63] *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012).
[64] *Id.* at 617.
[65] Doc. 1 at ¶ 90.
[66] *Id.* at ¶¶ 42, 49.
[67] *Id.*
[68] *Id.* at ¶¶ 44, 46-47, 52-53

Case No. 1:15-CV-01670
Gwin, J.

Plaintiff alleges that SPS did not conduct a "reasonable investigation" before informing the credit reporting agencies that it had verified the debt. At best, Plaintiff alleges, SPS "conducted a cursory computer check against its own minimal records."[69] Defendant responded that it conducted a reasonable investigation. There is no additional factual information in the pleadings as to the nature of Defendant's investigation. However, in its brief, Defendant writes that it was "able to rely on the judgment finding Forgues liable on the Note and Mortgage to verify the information was correct."[70]

This is a close call. The outcome of the investigation was likely correct, given that the foreclosure judgment had already been rendered at the time the credit reporting agencies identified the disputed debt to SPS. Nevertheless, merely because the outcome was correct does not mean SPS met its duty in conducting a reasonable investigation in light of the specificity of Plaintiff's dispute. Absent any facts put forward by SPS regarding the nature of its investigation, this Court cannot dismiss the claim at this stage.

The Court **DENIES** Defendant's motion as to this claim.

### iii. Section 1681s-2(b): Identifying Disputed Debts

Furnishers have additional obligations under § 1681s-2(b). If a consumer continues to dispute a debt, a furnisher has an obligation to identify the debt as disputed when furnishing information to the credit reporting agency.

However, this obligation is only triggered by a bona fide disputes. "In other words, a

---

[69] *Id.* at ¶¶ 95.
[70] Doc. 8. at 17

Case No. 1:15-CV-01670
Gwin, J.

furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute."[71] The Tenth Circuit has addressed this issue under similar circumstances. In that Tenth Circuit case, the plaintiff argued that his credit report failed to indicate that he continued to dispute his mortgage with Bank of America.[72] However, the Tenth Circuit noted that the court had already rejected Plaintiff's underlying argument that the debt was invalid, and that Plaintiff had only raised its disputes after Bank of America had foreclosed on the property.[73] As a result, "the dispute was not bona fide, and BANA therefore had no obligation to identify it."[74]

Plaintiff argues that Defendant has failed to identify her mortgage debt as disputed in furnishing information to the credit reporting agencies. Much like in the Tenth Circuit case, however, Plaintiff's dispute is meritless. A foreclosure judgment was already on the property. And, as stated above, this Court is bound by the state court's decision. SPS did not have an obligation to mark the debt as disputed.

The Court **GRANTS** Defendant's motion as to this claim.

---

[71] *Gorman*, 584 F.3d at 1163.
[72] *Sartori v. Susan C. Little and Associates, P.A.*, 571 Fed. App'x 677, 682 (10th Cir. 2014).
[73] *Id.*
[74] *Id.*

Case No. 1:15-CV-01670
Gwin, J.

## IV. Conclusion

Defendant's motion to dismiss is granted in parted and denied in part in accordance with this opinion.

IT IS SO ORDERED.

Dated: December 8, 2015            s/ *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE