# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE J. FORGUES, | ) | CASE NO. 1:15-cv-1670 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE MCHARGH |
| | ) | |
| SELECT PORTFOLIO SERVICING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF CHRISTINE J. FORGUES' MOTION TO FURTHER AMEND THE COURT'S DECEMBER 8, 2015 OPINION & ORDER

Plaintiff Christine J. Forgues, by and through her undersigned counsel, respectfully moves this Court pursuant to Fed.R.Civ.P. 54(b) for an Order amending the Court's December 8, 2015 Opinion & Order (hereinafter the "Order") in response to the Court's order in chambers on March 15, 2016 according to its invitation in the Court's Opinion & Order, Doc. 36 at 3:

> Plaintiff alleges that "the Court's Order clearly did not dismiss Plaintiff's claim brought under Section 1692e(8) that SPS reported to the credit reporting agencies without an 'account,' as the term is narrowly defined in 1693a(2)." Plaintiff points to paragraphs 11, 14 and 96 of her complaint in stating that she stated a claim under 1692e(8). None of these paragraphs invoke statutory provision 1692e(8). It is unclear to the Court exactly what claim Plaintiff is attempting to allege. The Court encourages Plaintiff's newly-retained counsel to identify what claim this is and ensure that it is non-frivolous and well-pled.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... ii

PLAINTIFF'S CLAIM UPON WHICH AMENDMENT IS SOUGHT ........................................ 2

    A. Background .......................................................................................................... 2

    B.  Plaintiff identifies her claim that SPS violated 15 U.S.C. § 1692e(8) by: "communicating or threatening to communicate to any person credit information which is known or which should be known to be false," not considered on the original motion. ..................................... 3

    C.  There is no evidence showing that SPS took any steps to verify whether its FDCPA § 1692a(5) debt qualified as an "account" within the meaning of the FCRA before going about its "standard collection and credit reporting activity" or as it was required to do under 1681s-2(b). ...................................................................................................................... 9

    D.  Plaintiff's claim under § 1692e(8) dovetails with and supports Count 2: Violation of the Fair Credit Reporting Act ("FCRA") Section 1681s-2(b): Reasonable Investigation............ 10

    E.  SPS's investigation was inherently not reasonable because it cannot address whether the disputed item qualifies as an "account" as narrowly defined in the FCRA............................ 11

    F.  The Court could award punitive damages on Plaintiff's claim for reckless disregard of a requirement of the Fair Credit Reporting Act. ..................................................................... 11

CONCLUSION ............................................................................................................ 12

PAGE LIMIT CERTIFICATION ....................................................................................... 14

CERTIFICATE OF SERVICE ........................................................................................... 15

## **TABLE OF AUTHORITIES**

### **Cases**

Bersaw v. Northland Group Inc., No. 14-cv-123-JL, D. New Hampshire (2015)........................ 12

Bridge v. Ocwen, 681 F.3d 355 (6th Cir. 2012) ........................................................... 4

Johnson v. MBNA Am. Bank, NA, 357 F.3d 426 (4th Cir.2004) ................................................. 11

Louisville/Jefferson County Metro Government v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009)........................................................................................................... 1

Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 Fed.Appx. 949 (6th Cir. 2004) .... 1

Safeco Ins. Co. of Amer. v. Burr, 551 U.S. 47 (2007)................................................................ 12

Thibodeaux v. Rupers, 196 F. Supp. 2d 585 (S.D. Ohio 2001) .................................................... 12

**Statutes**

15 U.S.C. § 1681a(r)(4) ................................................................................................................ 9

15 U.S.C. § 1681a(r)(5) ................................................................................................................ 9

15 U.S.C. § 1681i(a)(2)................................................................................................................. 7

15 U.S.C. § 1681q ........................................................................................................................ 8

15 U.S.C. § 1681s-2(b) .......................................................................................................... passim

15 U.S.C. § 1681s-2(b)(1)(E) ...................................................................................................... 5

15 U.S.C. § 1691a ........................................................................................................................ 6

15 U.S.C. § 1692a(5) .................................................................................................................... 9

15 U.S.C. § 1692a(6)(F)(iii) ........................................................................................................ 4

15 U.S.C. § 1692e(12) .................................................................................................................. 4

15 U.S.C. § 1692e(8) ......................................................................................................... 3, 5, 6, 7

15 U.S.C. § 1693a ........................................................................................................................ 6

15 U.S.C. § 1693b(2) .................................................................................................................... 9

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF CHRISTINE J. FORGUES' MOTION TO FURTHER AMEND**
**THE COURT'S DECEMBER 8, 2015 OPINION & ORDER**

District courts have authority under both common law and Fed.R.Civ.P. 54(b) to reconsider an interlocutory order and to reopen any part of a case before final judgment. As the Court of Appeals for the Sixth Circuit stated in Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 Fed.Appx. 949 (6th Cir. 2004):

> The Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders. Because of this, some circuits have suggested that a district court's power to reconsider an order before final judgment exists under federal common law, not the Federal Rules of Civil Procedure. See, e.g., City of Los Angeles v. Santa Monica Baykeeper, 254 F.3d 882, 886 (9th Cir. 2001). Although we agree that the authority for hearing such motions has a common law basis, we find additional support in Federal Rule of Civil Procedure 54(b). See Fayetteville v. Commercial Builders, Inc., 936 F.2d 1462, 1469-70 (4th Cir.1991) (approving of Rule 54(b) as a proper procedural vehicle for bringing motions to reconsider interlocutory orders).

> District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment. See [Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)]. This authority allows district courts "to afford such relief from [interlocutory orders] as justice requires." Citibank N.A. v. Fed. Deposit Ins. Corp., 857 F.Supp. 976, 981 (D.D.C. 1994); see also Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981). Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. Reich v. Hall Holding Co., 990 F.Supp. 955, 965 (N.D.Ohio 1998).

Id. at 959 (footnote omitted). See also Louisville/Jefferson County Metro Government v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009) (quoting Rodriguez, 89 Fed.Appx. at 959).

Plaintiff supports her motion with her verified complaint ("Complaint") and Exhibits, and SPS's exhibits presented and attached to Plaintiff's deposition which took place on March 7,

2015 ("Deposition Exhibit").

**PLAINTIFF'S CLAIM UPON WHICH AMENDMENT IS SOUGHT**

    **A.**     **Background**

Plaintiff Christine J. Forgues, pro se, filed her complaint alleging violations under the Fair Debt Collection Practices Act ("FDCPA") and Fair Credit Reporting Act ("FCRA"). The Court then dismissed the FCRA claim under the portion of 1681s-2(b) requiring furnishers of credit information to identify disputed debts, as a meritless dispute in light of the judgment of foreclosure. *See* Doc. 21 at 7, 11, and 12. Plaintiff sought reconsideration of that Order. *See* Doc. 26.

Importantly, the Court also dismissed claims under FCRA § 1681s-2(a) because there is no private right of action under that portion of the statute which requires that furnisher, SPS, "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Doc. 21 at 13. However, there is a corresponding private right of action Plaintiff presses under FDCPA § 1692e(8) prohibiting debt collector, SPS, from "[c]ommunicating or threatening to communicate to any person credit information **which is known or which should be known to be false**, including the failure to communicate that **a disputed debt is disputed**." 15 U.S.C. § 1692e(8).[1] SPS has consistently not referred to Plaintiff's claim under § 1692e(8) when given the opportunity.[2]

The dismissed claims disputed the debt as one that is not actually owed. However, four claims survive that have nothing to do with validity of the debt, but relate strictly to the behavior

---

[1] 15 U.S.C. § 1692e broadly provides: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

[2] See Ms. Forgues's Opposition to SPS's Motion to Dismiss, Doc. 9 at p. 5. ("The facts are not disputed by SPS's motion based on hearsay arguments … that SPS cannot be liable under 1681s-2(a) for reporting information to credit reporting agencies when it is already liable under § 1692e(8) as claimed—which is not even addressed in its motion.")

and conduct of **SPS as a debt collector** and its duty as a <u>furnisher</u> to investigate consumer disputes from credit reporting agencies.

The Court denied dismissal of Forgues' two FDCPA claims alleging violations of 15 U.S.C. § 1692c, the prohibition on communications with debtors at inconvenient times, and 15 U.S.C. § 1692d, the prohibition on harassing or abusive communications. *See* Doc. 21 at 9, 10. The Court also denied dismissal of Forgues' claim under the portion of 1681s-2(b) that imposes five additional duties on furnishers of credit information to conduct a reasonable investigation when the furnisher receives "notice of dispute" from a credit reporting agency itself. *See* Doc. 21 at 15.

**B. Plaintiff identifies her claim that SPS violated 15 U.S.C. § 1692e(8) by: "communicating or threatening to communicate to any person credit information which is known or which should be known to be false," not considered on the original motion.**

Under 15 U.S.C. 1692e, a debt collector may not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff claims under Section 1692e(8) is that SPS communicated information about a debt to three <u>persons</u>,[3] credit reporting agencies, as credit information purported to be of an "account" (<u>see</u> following definition) known or which should be known to be false. The statutory protection afforded under the "least sophisticated consumer" standard is so broad that even "threatening to communicate" such information to any person is a violation of section 1692e. 15 U.S.C. § 1692e(8).

The FCRA takes its definition of the term "account" from the Electronic Fund Transfer Act, 15 U.S. Code § 1693a(2), which provides:

> (2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end

---

[3] 15 U.S.C. 1692e(8) more specifically describes as a violation "[c]ommunicating or threatening to communicate to <u>any person</u> credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

3

credit plan as defined in section 1602(i) of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.

When Defendant SPS reports an "account" in Plaintiff's credit report, SPS is falsely representing that Deutsche Bank is Plaintiff's creditor.[4] SPS cannot use the account number of the alleged original creditor, Chase, because that account is closed with a zero balance. *See* Deposition of Christine Forgues, Exhibit "J." The purported account has been satisfied and is reflected on her credit reports as having a zero balance when Chase decided to ostensibly assign the defaulted debt to a buyer for "valuable consideration," implying that the defaulted debt is the "account" that has been turned over to an innocent purchaser for value.[5] SPS establishes its own accounts <u>for business purposes</u>—as opposed to personal, family, or household purposes[6]—out of fragmented data that it purchases. SPS assigns a new account number, and falsely presents itself in Plaintiff's credit report as if it is a creditor holding an "account" that Plaintiff opened and that has purportedly been open since 2007. In this Circuit, Deutsche Bank, having received its data or debt in default,[7] can never become Plaintiff's creditor or be considered Plaintiff's creditor. <u>Id</u>. <u>Even reducing that debt to judgment, res judicata or not, does not mean that Deutsche Bank or SPS suddenly have an **"account"** as narrowly defined in the FCRA.</u> Plaintiff pled that she

---

[4] SPS has not disputed that it is a debt collector under the FDCPA. Doc. 21 at 9. It is undisputed that Deutsche Bank, as Trustee, received the alleged debt in default on or about 14 May 2010, and the debt was in default at the time servicing rights were assigned to SPS on or about June 1, 2013. See April 29, 2015 letter from SPS, Plaintiff's Complaint Exhibit B. The letter states, "Your account is due for November 1, 2009" and "SPS acquired the servicing of this loan from JPMorgan Chase, effective June 1, 2013." Also enclosed were copies of "the Note, Mortgage, and assignment for your review" which assignment is dated 14 May 2010. <u>See</u> <u>Bridge v. Ocwen</u>, 681 F.3d 355 (6th Cir. 2012) ("Therefore, we hold that the definition of debt collector pursuant to 15 U.S.C. § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention. Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error.")
[5] Additionally, Section 1692e(12) specifically describes as a violation the "false representation or implication that accounts have been turned over to innocent purchasers for value."
[6] <u>See</u> 15 U.S.C. § 1693a(2), definition of "account."
[7] <u>See</u> Complaint, Doc. 1 at ¶¶ 10–14.

disputed the account and yet SPS "verified" that the "credit account" belonged to Plaintiff after she disputed the account as not hers. See, below, excerpts from the Verified Complaint.

Defendant, SPS's representation of the character and legal status of the debt as an "account," is false and is not apparent on the face of the information itself. SPS's communication of that false credit information is, <u>inherently</u>, "deceptive or misleading representation" which <u>prevents</u> a finding, by SPS's system of investigation that that information is "inaccurate or incomplete or cannot be verified." 15 U.S.C. § 1681s-2(b)(1)(E). Therefore, SPS's investigation, which admittedly[8] relies upon a cursory computer check against its own system's records, was not a reasonable investigation of Plaintiff's dispute of an "account." SPS has yet to prove or provide any evidence that it holds its "account" as narrowly defined in the FCRA. Furthermore, SPS has yet to prove or provide any evidence that it conducted a reasonable investigation as required by the FCRA.

Plaintiff's claim also raises a question of whether SPS can, under FDCPA § 1692e(8), legally communicate its credit information in order to manufacture a "permissible purpose"[9] as the false means to obtain Plaintiff's credit information, and ultimately fail, willfully by design, to reasonably investigate that "account" when disputed by the consumer (Plaintiff) in violation of FCRA 1681s-2(b).

Plaintiff's claim states in pertinent part (emphasis added):

Doc 1 at ¶ 96 alleges:

As a debt collector, and **without an "account" as that term is narrowly defined under FCRA,** Defendant SPS should not be reporting in Plaintiff's credit file in connection with the collection of a debt. **SPS's policies do not comply with a furnisher's obligations under the law.**

Doc. 1 at ¶ 11 alleges:

---
8
9

**Defendant SPS is a debt collector masquerading as a creditor and lender, furnishing information to <u>credit</u> reporting agencies without being an actual <u>creditor</u>[10], without a lawful <u>account</u>[11] to report and without express consent of Plaintiff**, and is in the process of collecting another person's alleged debt acquired after alleged default by seizing property rightfully belonging to the Plaintiff that has **nothing to do with a 1692a(5) debt**. Purchasing evidence of an alleged debt does not allow a debt collector to behave like a creditor.

Doc. 1 at ¶ 14 alleges:

Defendant can make no rational argument in law or fact that a creditor is present in collecting the debt … **or that SPS can report the debt as an "account" on Plaintiff's credit report**.

Doc. 1 at ¶ 72 alleges:

**SPS in violation of § 1692e(8) reported erroneous information or information which it knew or should have known to be false** and did not communicate that the debt was disputed. Section 1692(e)(8) requires debt collectors to communicate the disputed status of a debt if the debt collector "knows or should know" that the debt is disputed; this standard requires no notification by the consumer, written or oral, and instead depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when knowledge is "acquired." SPS should have reported the debt as disputed by consumer. See Experian Credit Report dated May 19, 2015, Page 11, Exhibit C. If SPS is reporting, SPS is collecting. SPS had no business reporting the debt to the CRAs in the first place as a non-creditor.

Doc. 1 at ¶ 90 alleges:

---

[10] 15 U.S. Code § 1691a - Definitions; rules of construction. (e) The term "creditor" means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

[11] The FCRA takes its definition of the term "account" from the Electronic Fund Transfer Act, which provides:

15 U.S. Code § 1693a – Definitions. (2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602 (i) [1] of this title), as described in regulations of the Bureau, **established primarily for personal, family, or household purposes**, **but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.**

12 CFR 1005.2 – Definitions. (1) **"Account" means** a demand **deposit (checking)**, **savings**, or other consumer **asset** account (other than an occasional or incidental credit balance in a credit plan) held directly or indirectly by a financial institution and **established primarily for personal, family, or household purposes**. (2) The term includes a "payroll card account" which is an account that is directly or indirectly established through an employer and to which electronic fund transfers of the consumer's wages, salary, or other employee compensation (such as commissions), are made on a recurring basis, whether the account is operated or managed by the employer, a third-party payroll processor, a depository institution or any other person. For rules governing payroll card accounts, see § 1005.18. (3) **The term does not include an account held by a financial institution under a bona fide trust agreement.**

**Defendant failed to delete information found [by the Plaintiff] to be inaccurate and erroneous, and failed to conduct a reasonable investigation of Plaintiff's disputes.**

Doc. 1 at ¶ 25 alleges:

**SPS did not have a permissible purpose for obtaining Plaintiff's consumer report. The FCRA does not permit the retrieval of a consumer report in connection with the collection of any debt, but Defendant SPS did so willfully and negligently anyway. SPS had reckless disregard of a requirement of FCRA as to whether it had a permissible purpose for requesting Plaintiff's report.**

Doc. 1 at ¶ 46 avers:

On June 3, 2015 this consumer received Equifax's Results Of Our Reinvestigation regarding her dispute with the CRA regarding **inaccurate information by SPS** which stated, **"We have researched the credit account. Account#-277001494\* The Results are: We verified that this item belongs to you."** The SPS line item was not deleted.

See Deposition Exhibit "M".

Doc. 1 at ¶ 50 avers:

On June 18, 2015, Plaintiff served by certified mail a Consumer Dispute Notice and Reinvestigation Request to SPS filed pursuant to 15 USC§1681i(a)(2) of the Fair Credit Reporting Act ("FCRA"), which stated in pertinent parts:

I made such request on May 29, 2015 with the three major Credit Agencies (Experian, Equifax, TransUnion) for the "furnisher" SPS to **reinvestigate the alleged account it is reporting.** Accordingly, two previous Notices of Dispute were served upon Select Portfolio Servicing, Inc. (SPS) pursuant to the FDCPA, §1692g on March 31, 2015 and June 2, 2015 to which no validation was provided.

In accordance with the FCRA, direct notice is being served upon you pursuant to the provisions set forth in the **FCRA §1681s-2(b), and FDCPA, §1692e(8).**

Plaintiff requested the exact process used by each of the CRAs to verify this **purported account**.

Doc. 1 at ¶ 53 avers:

In a mailing dated July 15, 2015 consumer received from Equifax the result of reinvestigation of her second dispute with the CRA regarding inaccurate information by SPS which they called the "Results of Your Investigation." Equifax stated **"We have researched the credit account. Account#-277001494*"** ( Select Portfolio Servicing,inc) "The Results are: This creditor has verified to OUR company that the balance is being reported correctly. The prior payment history on this **account** has been updated. Additional information has been provided from the original source regarding this item." The SPS trade line was not deleted.

Doc. 1 at ¶ 60 avers:

**The above-detailed conduct by Defendant has more to do with its deceptive and illegal acts in its attempt to collect the alleged debt, as opposed to any legitimacy of its alleged debt.** The FDCPA (and FCRA) relates to the Defendant even if it was collecting a legitimate debt … **neither did Defendant provide any credit or services to Plaintiff.**

Doc. 1 at ¶ 92 alleges:

**Plaintiff alleges that Defendant failed to conduct a reasonable reinvestigation.**

Doc. 1 at ¶ 97 alleges in relevant parts:

Defendant, SPS, violated sections 1681n and 1681o of the FCRA by engaging in the following conduct:

(h) **willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b)**;

(i) **willfully and negligently accessing Plaintiff's credit file for an impermissible purpose**; and

(j) **willfully and negligently obtaining Plaintiff's credit file through the use of false pretenses or knowingly without a permissible purpose in violation of 15 U.S.C. § 1681q**.

FCRA's unambiguous definition of "account" specifically <u>excludes</u> accounts that may have been opened by SPS for its business purposes. Plaintiff's credit reports reflect that Chase closed its purported delinquent mortgage account <u>after default</u>, reporting a zero balance. <u>See</u> Deposition Exhibits "J", "R", and "S." Ms. Forgues' 5/19/2015 credit report, attached to

Plaintiff's complaint as Exhibit C, page 11, states, "Here you will find specific information on each account you opened, including current status and any past due information." The report shows SPS with an "Open" "Account" purportedly opened on 3/1/2007. But Forgues never opened any account purported by either debt collector Deutsche Bank, or debt collector SPS, who didn't appear on the scene until May of 2013. There is no evidence of an "account" relationship between Plaintiff and either Deutsche Bank or SPS by virtue of the debt it supposedly obtained in default for the purpose of collection.

**C.  There is no evidence showing that SPS took any steps to verify whether its FDCPA § 1692a(5) debt qualified as an "account" within the meaning of the FCRA before going about its "standard collection and credit reporting activity"[12] or as it was required to do under 1681s-2(b).**

Assuming, arguendo, even if SPS could hold an account established "for personal, family, or household purposes" by Deutsche Bank as trustee, an account held under a bona fide trust agreement is specifically excluded as an "account." See Complaint, ¶ 24. (Communication from SPS stated, "Deutsche Bank National Trust Company, as Trustee, on behalf of the holders of the J.P. Morgan Mortgage Acquisition Trust 2007-CH5 Asset Backed Pass-Through Certificates, Series 2007-CH5 is the owner of the account, and SPS is the mortgage servicer of the account.") Plaintiff alleged SPS knows or should have known this.

Plaintiff declares that there was no account that the Defendant had any right to collect or that it held in order to establish and certify a permissible purpose to obtain Plaintiff's credit report, or report a broadly defined "debt" as if it is a narrowly defined "account," § 1693b(2); 15 U.S.C. § 1681a(r)(4). Forgues has averred that "neither did Defendant provide any credit or services to Plaintiff," [13] as the reason SPS is not a "creditor" as defined in § 1681a(r)(5).

---

[12] Doc. 8 at 1.
[13] Doc. 1 at ¶ 60.

9

### D.     Plaintiff's claim under § 1692e(8) dovetails with and supports Count 2: Violation of the Fair Credit Reporting Act ("FCRA") Section 1681s-2(b): Reasonable Investigation.

15 U.S.C. § 1681s-2(b) imposes additional duties on furnishers of credit information. These obligations are triggered only when the furnisher receives "notice of dispute" from a credit reporting agency itself. After receiving a notice of dispute, the furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

Doc. 21 at 13 (footnotes omitted).

There is undisputed evidence that Plaintiff disputed the accuracy or completeness of information with a consumer reporting agency. Deposition Exhibit "I" demonstrates that the Credit Items being investigated by Experian are Select Portfolio Servicing, Account Number: 277001494…. , and the information Plaintiff provided, "I have no knowledge of this account." Exhibit "L" provided by SPS at the deposition, also demonstrates Plaintiff stated "I HAVE NO KNOWLEDGE OF THIS ACCOUNT." See also Exhibits "O," "P," and "Q" from the

deposition. It is undisputed that SPS is a furnisher of information under FCRA. [14] It is undisputed that the credit reporting agency(s) notified SPS of the Plaintiff's dispute because SPS responded to the dispute.

> **E.**     **SPS's investigation was inherently not reasonable because it cannot address whether the disputed item qualifies as an "account" as narrowly defined in the FCRA.**

Plaintiff's surviving FCRA claim is based strictly on SPS's duty to investigate consumer disputes, not a furnisher's duty to provide accurate information. There is no argument or evidence that furnisher, SPS, took steps to verify the disputed information as to whether its 1692a(5) debt qualified as an "account" within the meaning of the FCRA before going about its "standard collection and credit reporting activity"[15] or as it was required to do under 1681s-2(b). Defendant's admission, Doc. 8 at 17, that it was "able to rely on the judgment finding Forgues liable on the Note and Mortgage to verify the information was correct … SPS did not report incomplete or inaccurate information by not reporting her meritless dispute" is not reasonable investigation of the disputed "account." See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir.2004). Johnson sets a standard for reinvestigations, and suggests that furnishers should not be verifying the validity of debts they have previously reported unless they have the documents to "conclusively" refute information submitted by disputing consumers.

> **F.**     **The Court could award punitive damages on Plaintiff's claim for reckless disregard of a requirement of the Fair Credit Reporting Act.**

On this record, a reasonable finder of fact could conclude there was not a reasonable investigation of the "account" disputed by Plaintiff, and could conclude that SPS was either ignorant of, or simply ignored, the possibility that the debts Deutsche Bank, as trustee, retained it

---

[14] FCRA applies not only to those that furnish and report consumer credit information but also to those that furnish and report certain other types of information regarding consumers. See 15 U.S.C.A. § 1681a(d)(1) (West 1998 Supp. 2003). Thus, consistent with other provisions of the FCRA, § 1681s-2(b) uses the general terms "furnisher of information" and "consumer reporting agency." Johnson v. MBNA, 357 F.3d 426 (4th Cir. 2004).
[15] Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss, Doc. 15 at 1.

to collect from Forgues were not "accounts" within the meaning of the FCRA. This is, at a minimum, negligence, although it may well rise to the level of willfulness, too: as the Supreme Court has held, "reckless disregard of a requirement of FCRA [will] qualify as a willful violation," Safeco Ins. Co. of Amer. v. Burr, 551 U.S. 47 (2007), and a finder of fact could readily conclude that SPS recklessly disregarded the FCRA's requirement that it take steps to verify whether the debt qualified as an "account" within the meaning of the FCRA and reasonably investigate Plaintiff's dispute of an "account" which would be necessary to have a "permissible purpose" for requesting Forgues' report. "[Q]uestions involving a party's state of mind are generally appropriately resolved by a jury rather than on summary judgment." Thibodeaux v. Rupers, 196 F. Supp. 2d 585, 592 (S.D. Ohio 2001). See also Bersaw v. Northland Group Inc., No. 14-cv-123-JL, D. New Hampshire (2015). Therefore, the court could award punitive damages on Plaintiff's claim for willful non-compliance with the Fair Credit Reporting Act.

## CONCLUSION

Plaintiff's claim, brought pro se, under § 1692e(8), that Defendant, SPS, communicated credit "account" information without holding an account as narrowly defined in the FCRA, and that inherently prevents a reasonable investigation under FCRA § 1681s-2(b), is non-frivolous because it disputes the account, not the debt, and is supported by law and facts. Plaintiff has repeatedly and specifically pointed out where the Defendant, and the Court, has not addressed this claim. Based on the foregoing, the Court should amend its December 8, 2015 Order to allow the private right of action under FDCPA § 1692e(8) to proceed.

Respectfully submitted,

By:  /s/ JOHN HERRERA
JOHN HERRERA, Esq.
F.B.N.: 0636320

12

1801 Ponce De León Boulevard
Coral Gables, FL 33134
Tel. (305) 446-1504
Fax (305) 446-1505
Attorney for Plaintiff

## **PAGE LIMIT CERTIFICATION**

I certify pursuant to Local Rule 7.1(f) that this action is assigned a standard track and the

length of memoranda does not exceed 20 pages.

By:   /s/ JOHN HERRERA
JOHN HERRERA, Esq.
F.B.N.: 0636320
1801 Ponce De León Boulevard
Coral Gables, FL 33134
Tel. (305) 446-1504
Fax (305) 446-1505
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing PLAINTIFF CHRISTINE J. FORGUES' MOTION TO FURTHER AMEND THE COURT'S DECEMBER 8, 2015 OPINION & ORDER was filed electronically on Sunday, March 20, 2016. Notice was also sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

By:   /s/ JOHN HERRERA
JOHN HERRERA, Esq.
F.B.N.: 0636320
1801 Ponce De León Boulevard
Coral Gables, FL 33134
Tel. (305) 446-1504
Fax (305) 446-1505
Attorney for Plaintiff