UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
:
CHRISTINE J. FORGUES, : Case No. 1:15-CV-1670
:
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 43, 52]
SELECT PORTFOLIO SERVICING, INC., :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Christine Forgues sues Defendant Select Portfolio Servicing ("SPS"). She alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") relating to the mortgage debt on her residence.[1]

On December 8, 2015, this Court partially granted Defendant's motion to dismiss, after finding that Plaintiff failed to state a claim on most of the purported grounds for relief.[2] Plaintiff has three surviving claims: she alleges violation of 15 U.S.C. § 1692c, the prohibition on communications with debtors at inconvenient times; 15 U.S.C. § 1692d, the prohibition on harassing or abusive communications; and 15 U.S.C. § 1681s-2(b), the requirement for credit information furnishers to conduct a "reasonable investigation."

---

[1] Doc. 1.
[2] Doc. 21.

Defendant moves for summary judgment on all three claims.[3] Plaintiff opposes.[4] In support of her opposition, Plaintiff submits a sworn affidavit.[5] Defendant moves to strike the affidavit, claiming that it contradicts Plaintiff's earlier deposition testimony.[6]

For the following reasons, the Court **GRANTS IN PART** Defendant's motion to strike. The Court **GRANTS** Defendant's motion for summary judgment. The Court addresses each motion in turn.

**I. Motion to Strike**

*A. Legal Standard*

"A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."[7] This so-called sham affidavit rule "is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists."[8]

Where there are direct contradictions between the newly-filed affidavit and the deposition, courts do not consider the affidavit "unless the party opposing summary judgment provides a persuasive justification for the contradiction."[9] For instance, newly-discovered evidence may result in admissible contradictory testimony. However, when a party has access to the evidence

---

[3] Doc. 43.
[4] Doc. 49. Defendant replies. Doc. 51.
[5] Doc. 49-1.
[6] Doc. 52. Plaintiff opposes. Doc. 55. Defendant replies. Doc. 56.
[7] *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).
[8] *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir.2006).
[9] *Id.* at 908.

before the earlier testimony, the access usually results in finding that the later affidavit was submitted to create a sham issue of fact.[10]

If there are no direct contradictions, then the district court may strike or disregard the affidavit if "the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'"[11]

*B. Discussion*

As described in more detail below, Plaintiff's Section 1692c claim turns on whether Defendant SPS knew or should have known that calling Plaintiff between 8:30am and 9:30am – during her morning conference calls at work – was inconvenient to Forgues.

On February 12, 2016, Plaintiff received a copy SPS's Contact History Report ("the call log"). The call log contained summaries of every phone call with Plaintiff.

On March 7, 2016, Defendant deposed Plaintiff.[12] In the deposition, Plaintiff stated that "more than once" she requested SPS to not call between 8:30am and 9:30am. However, Plaintiff could not remember particular dates, or particular conversations.[13]

On March 14, 2016, Defendant SPS filed a motion for summary judgment. In part, SPS argued that Forgues never made a clear request to SPS to not call at any specific time.

After receiving SPS's motion for summary judgment, on March 29, 2016, Plaintiff filed a sworn affidavit supporting her opposition to Defendant's motion for summary judgment.[14] In deposition testimony on March 7, 2016, only three weeks before her affidavit, Forgues had

---

[10] *Id.* at 909.
[11] *Id.* at 908 (quoting *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986)).
[12] Doc. 43-2 at 1.
[13] Doc. 52-1.
[14] Doc. 49-1.

testified that she did not have any record of asking SPS to stop 8:30am-9:30am calls; she did not recall whom she spoke with; and she could not give any specific date.

In the affidavit filed after receiving SPS's motion for summary judgment, Plaintiff provided specific details as to the instances where she says she instructed SPS not to call. For example, Plaintiff recalls that on August 30, 2014, she received a call from SPS that caused a "clicking" noise on her Bluetooth connection during a work conference call.[15] Plaintiff recalls that "This call made me angry. I grabbed my cell phone, answered quickly, and told the SPS rep that I was unable to talk."[16] Plaintiff says that she then "clearly and deliberately instructed SPS not to call" during the morning conference call.[17] In the affidavit, Plaintiff identifies three phone calls in which she said calling between 8:30am and 9:30am was inconvenient: August 30, 2014, October 27, 2014, and November 14, 2014.[18] In trying to explain the differences between her deposition testimony that she could not recall any specifics and the affidavit, Plaintiff states that SPS's call log "refreshed my memory, and corroborated my recollections as to the exact dates and times of the calls."[19]

Defendant moves to strike those portions of the affidavit that contradict Plaintiff's earlier testimony. Defendant argues that the submission is a sham affidavit because the call log had previously been available. Plaintiff opposes, arguing that only a redacted version of the call log was available.

The Court has reviewed both the unredacted and the redacted versions of the call log. The Court agrees with Defendant that Forgues had the same background information before her

---

[15] *Id.* at ¶ 7.
[16] *Id.*
[17] *Id.*
[18] *Id.* at ¶¶ 7-9.
[19] *Id.* at ¶ 3.

deposition. There was no material difference which would have prohibited Plaintiff from identifying the relevant calls and recalling the specific instances at her deposition. The Court agrees with Defendant that Plaintiff's detailed sensory recollection of the phone calls with SPS is conflicts with her deposition testimony that she could remember no specific details of the phone calls where she says she instructed SPS not to call.

Of course, a party can refresh her memory by reviewing documents, and submit that refreshed recollection to the Court on summary judgment. However, even if Plaintiff's later affidavit is not in direct conflict with the earlier deposition, the Court finds there are other indicia that Forgues' submission is a sham affidavit aimed at creating a disputed fact to defeat summary judgment. She has no other support for her late-remembered claim that she told SPS not to call.

Indeed, there is contradictory evidence. First, Plaintiff stated in her deposition that SPS noted her request not to be called in her file.[20] Although SPS maintained contemporaneously created call notes, the call log has no entry on any of the dates related to an instruction not to call, although other aspects of the call and conversation are noted on each occasion.[21]

Second, the Court has a transcript of a call Plaintiff made in February 2015 in which she told SPS that she would be unable to pick up the phone during her morning conference call.[22] Although Plaintiff claims she made this request three times before, Plaintiff never says anything in the February 2015 phone call that she had made the request before, or that the request was not being followed.

Third, Defendant has been able to locate the October 27, 2014 call, which Plaintiff averred to in her affidavit. Defendant produced a complete transcript, which shows that Plaintiff never

---

[20] Doc. 43-2 at 8.
[21] Doc. 43-1 at 60, 68, 74. In the entry for the call dated August 30, 2014, SPS notes that plaintiff was "unable to talk now she will call back later today."
[22] Doc. 43-3.

mentioned that the morning call was inconvenient time or that SPS should not call between 8:30am and 9:30am.[23] The only mention of timing in the October 27, 2014 call, is Plaintiff's statement that "I just missed a call from somebody. I was just getting into work and I couldn't pick up quick enough. So I was just calling back to see if there is anything else they need."[24] This does not support Plaintiff's allegation in the affidavit that during the October 27, 2014 call she "instructed [SPS] not to call in the morning hours."[25]

There are direct inconsistencies between Plaintiff's earlier statements that she could not recall specific instances of instructing SPS not to call, and her later affidavit laying out dates, times, and circumstances of the calls. Even if the affidavit is construed as merely supplementing the deposition record, the Court finds sufficient indicia that the submission is a sham affidavit with regard to the August 30, 2014, October 27, 2014, and November 14, 2014 calls. The Court **GRANTS IN PART** Defendant's motion, striking paragraphs 6-8 of Plaintiff's affidavit. The Court **DENIES** Defendant's motion to strike Plaintiff's summary judgment exhibits as untimely. The Court will consider these documents in deciding the motion for summary judgment.[26] The Court **DENIES** as moot Defendant's motion to strike Plaintiff's Experian exhibits, as explained more fully below.

---

[23] *See* Doc. 51-2 at 2-3.
[24] *Id.* at 1.
[25] Doc. 49-1 at ¶ 8.
[26] Plaintiff appeared to counter Defendant's motion by arguing that Plaintiff's own deposition could not be used because it was uncertified. Doc. 55 at 3. The certification pages are included in the excerpts attached to Defendant's motion to summary judgment. The Court considers Plaintiff's deposition to be admissible evidence on this motion for summary judgment.

Case No. 1:15-CV-1670
Gwin, J.

**II. Motion for Summary Judgment**

*A. Background*

On March 23, 2007, Plaintiff Forgues, with her late husband, borrowed $144,440 from Chase Bank USA, N.A. ("Chase") to finance their Cleveland, Ohio residence.[27] Forgues and her husband signed the Note that promised to repay the loan, and executed a Mortgage securing the promise to repay.[28] The Forgueses defaulted on the note in 2009.[29]

Both the Mortgage and the Note were subsequently assigned to Deutsche Bank National Trust Company ("Deutsche Bank") in its role as trustee for an asset-backed security.[30]

Deutsche Bank filed a state court foreclosure action on March 29, 2012 in the Cuyahoga County Court of Common Pleas.[31] Plaintiff defaulted in the state foreclosure action, though her effort to vacate the default judgment remains on appeal. Plaintiff still resides at the property.

Plaintiff brings this suit, alleging violations of the Fair Debt Collection Practices Act and Fair Credit Reporting Act. Three of her claims survive. First, Plaintiff claims that Defendant violated 15 U.S.C. § 1692c by calling her between 8:30am and 9:30pm, a time that SPS allegedly knew to be inconvenient. Second, Plaintiff claims that Defendant violated 15 U.S.C. § 1692d by calling Plaintiff repeatedly with intent to harass her. Third, Plaintiff claims that Defendant did not reasonably investigate the mortgage debt when Plaintiff disputed the debts with the three credit reporting agencies.

Defendant moves for summary judgment as to each claim.

---

[27] Doc. 1 at ¶ 15.
[28] Doc. 8 at 1.
[29] Doc. 1-2.
[30] Doc. 8 at 2.
[31] *Id.*

-7-

*B. Legal Standard*

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[32] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[33] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[34] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[35] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[36]

*C. Inconvenient Times*

15 U.S.C. § 1692c prohibits a debt collector from collecting debt "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." "In the absence of knowledge to the contrary," convenient times are between 8:00am and 9:00pm.[37]

"Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary."[38]  Section 1692c includes such a

---

[32] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[34] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[35] *Id.* at 586.
[36] *Killion*, 761 F.3d at 580 (internal citation omitted).
[37] 15 U.S.C. § 1692c.
[38] *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 n.11 (9th Cir. 2006) (quoting *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355 (S.D. Fla. 2000)).

knowledge requirement.[39] A debtor's request to not be contacted during certain times meets this knowledge requirement.[40] The debt collector's constructive knowledge of inconvenience could also potentially meet the requirement that the debt collector "should know" not to call. However, a chain of inferences leading to the conclusion that a call time is "inconvenient" will not support liability. There must be a clear reason that the debt collector "know or should know" that times would be inconvenient.

Here, no reasonable jury could conclude that SPS knew or had reason to know that calling between 8:30am and 9:30am was inconvenient to Plaintiff. Defendant identified only two phone calls from Plaintiff in which she mentioned the morning conference calls: one on November 13, 2013, and the other on February 10, 2015. The transcripts for both calls are available. Neither call was sufficient to put Defendant on notice that the call time was inconvenient.

In the November 13, 2013 call, Plaintiff states "Okay. I just can't take your call right now. I've got a work conference call that comes on in five minutes and I can't be late, so if you give me a call in, uh. The conference call usually goes from 8:30 to 9:30. So if you want to give me a call right after that it would be fine."[41] This statement did not put Defendant on notice that the time was inconvenient. Even use of the word "usually" to describe the call does not provide a reason why Defendant knew or should have known that Defendant should never call between 8:30 and 9:30.

---

[39] Plaintiff misreads the statute when she states "Known inconvenience to Ms. Forgues is undisputed by SPS, and is all the statute requires." Doc. 49 at 3. A reasonable jury must be able to conclude that the debt collector, SPS, had reason to know of the inconvenience, not merely Ms. Forgues.

[40] *Comacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) ("[A] debtor's oral notification to a debt collector entitles a debtor to relief under § 1692c(a)(1)."); *Shand-Pistilli v. Professional Accoutn Servs. Inc.*, No. 10-cv-1808, 2010 WL 2978029, at *3 (E.D. Pa. July 26, 2010) ("Under section 1692c(a)(1) a consumer may request that debt collectors cease calling at any time or place known to be inconvenient, including the consumer's home."); *Cf. Fox v. Citicorp Credit Servs.*, 15 F.3d 1507 (9th Cir. 1994) (noting that two "requests" to stop calling plaintiff at her place of employment were sufficient for the 1692c claim, although the 1692c claim was not before the Court in that case).

[41] Doc. 43-3 at 2.

Case No. 1:15-CV-1670
Gwin, J.

A second February 10, 2015, phone conversation is a closer call.[42] Importantly, Plaintiff, not SPS, initiated the call. Plaintiff was trying to renegotiate her loan and she called SPS about whether SPS had received information SPS needed to consider changing the loan. In that call, Plaintiff asked for confirmation that Defendant had received the paystubs Plaintiff had submitted at SPS's request. Defendant's representative confirmed that Plaintiff has submitted the paystubs. Plaintiff asked "is there anything else that my files says that you need to complete the modification review?" Defendant's representative responded that there was not at the moment but that, "if we are to request any more documentation we will be contact with you of that documentation in which we are requesting" [sic].

After Defendant SPS told Plaintiff that Defendant seemed to have everything it needed to consider Plaintiff's request for a loan modification, Plaintiff responds, "Okay, that makes sense. And let's see – oh yeah, can you mark my file that they always seem to call me – I have a morning conference call at work every single day from 8:30 to 9:30, and that's always when they seem to call me." Defendant's representative responds that there's not a way to change the dialing system to accommodate particular times. Plaintiff responds, "Okay, Alright."

In this exchange discussing Plaintiff's request for a loan modification, Plaintiff did not make an unequivocal request to not be called during her morning conference call. Moreover, this exchange is insufficient for Defendant to be put on constructive notice of inconvenience. Defendant's representative said that the company would be in touch if it needed additional materials. Plaintiff then said to "mark in my file" that Forgues needed to call into a conference call bridge line from 8:30am to 9:30am. Plaintiff's statement implies that she would not be able to answer during that time, because Forgues would be on a conference call.

---

[42] The full transcript is found at Doc. 43-3.

Case No. 1:15-CV-1670
Gwin, J.

Defendant would have had to make inferences to go from this statement to the conclusion that calling during that time was inconvenient and prohibited under 1692c. Indeed, Plaintiff's ultimate conclusion "Okay. Alright." runs against such a reading. No reasonable jury could conclude that Defendant knew or had reason to know that calling between 8:30am and 9:30am was inconvenient.[43]

The Court **GRANTS** summary judgment to Defendant on Plaintiff's claim under Section 1692c.

*C. Harassment*

15 U.S.C. § 1692d prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." "Courts have followed the Federal Trade Commission's interpretations, finding that the term 'repeatedly' means 'calling with excessive frequency under the circumstances,' and that 'continuously' means 'making a series of calls, one right after the other.'"[44]

Generally district courts have found that less than one call per day is per se not harassment; however, there is no bright line rule regarding the number of calls that constitute harassment under this section.[45] For instance, even a high call volume may be indicative that a plaintiff was hard to

---

[43] As discussed above, the Court has struck portions of Plaintiff's affidavit alleging that she instructed Defendant not to call on three other occasions: August 30, 2014, October 27, 2014, and November 14, 2014. As the statements in the affidavit are not properly before the Court, there is no other basis to preclude summary judgment on behalf of Defendant on Plaintiff's Section 1692c claim.

[44] *Hicks v. Am. Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 515 (N.D. Ohio 2011) (citing to case law and *Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act,* Fed.Reg. 50097).

[45] *Id.* at 515.

Case No. 1:15-CV-1670
Gwin, J.

reach, not that the debt collector intended to harass.[46] Indeed, "the nature, extent, and context of the calls are also important."[47]

Here, no reasonable jury could conclude that Defendant had violated Section 1692d. SPS called Plaintiff, on average over the relevant period, once every three days.[48] In a few instances there was more than one call per day and more than seven calls in a week. But there is no evidence that the volume of calls meets the Federal Trade Commission's explanation of "repeated" and "continuous."

Moreover, the context of these phone calls is compelling. During this time, Plaintiff was working with SPS to modify her loan. The transcripts that have been attached to the motion for summary judgment show that many of the conversations dealt with Plaintiff's request to modify her loan. In one such call, Plaintiff is confirming that Defendant received documentation; in another, Plaintiff asks questions about the potential foreclosure sale. It is unsurprising that her mortgage servicer would want to be in regular contact.

Plaintiff's argument that some of the calls were just to "check in," does not defeat summary judgment. There is no evidence that these calls were untaken with an intent to harass, rather than part of the servicer's on-going effort to mediate possession of the property. There is no evidence that these calls were "repeated" or "continuous."

The Court **GRANTS** summary judgment to Defendant on Plaintiff's claim under Section 1692d.

---

[46] Plaintiff misstates the law to the extent she claims that her feelings of being harassed or annoyed are sufficient. The FDCPA only prohibits debt collector's actions when the collector undertakes them "with *intent* to annoy, abuse, or harass." 15 U.S.C. § 1692d.
[47] *Hicks*, 816 F. Supp. 2d at 515.
[48] Doc. 43 at 10-13; Doc. 43-1.

-12-

*D. Claim for Actual Damages*

Defendant moves for summary judgment on Plaintiff's claim for actual damages under Section 1692c and 1692d of the FDCPA.[49] Plaintiff does not dispute that she has withdrawn her claim for actual damages as to these claims.[50] Plaintiff however states that she may have actual damages under 1692e(8) given her motion, pending at the time, to amend the Court's earlier motion to dismiss. The Court has now denied this motion to amend.[51] There are no remaining claims under 1692e(8). The Court **GRANTS** summary judgment to Defendant as to actual damages.

*E. Reasonable Investigation*

Plaintiff's final claim is for violation of 15 U.S.C. § 1681s-2(b), which requires that SPS investigate the disputes it receives from a credit reporting agency (CRA) in a "reasonable" manner. These obligations are triggered only when the furnisher receives "notice of dispute" from a credit reporting agency itself.[52] After receiving a notice of dispute, the furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

---

[49] Doc. 43 at 13-14.
[50] Doc. 49 at 6.
[51] Doc. 57.
[52] 15 U.S.C. § 1681s-2(b).

-13-

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.[53]

The FCRA allows a private right of action for willful or negligent noncompliance with its requirements.[54]

After notification from a credit reporting agency, a furnisher's investigation into a disputed debt must be reasonable.[55] "Reasonableness" is not a fixed standard; rather, "how thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute."[56] For example, a furnisher should look to underlying records to verify that the debtor is properly identified. However, if the furnisher has earlier completed this same task in response to the same dispute, it is reasonable for a furnisher to then rely on its earlier thorough investigation.[57]

Defendant identifies five 2015 disputes that it became aware of from the CRAs: (1) May/June Equifax Dispute; (2) May/June Trans Union Dispute; (3) June/July Experian Dispute; (4) June/July Equifax Dispute; (5) June/July Trans Union Dispute. With each dispute, the CRA

---

[53] *Id.*
[54] *See* Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009).
[55] Boggio v. USAA Federal Sav. Bank, 696 F.3d 611, 616 (6th Cir. 2012).
[56] *Id.* at 617.
[57] Gorman, 584 F.3d at 1161 (distinguishing Johnson v. MBNA Am. Bank, 357 F.3d 426 (4th Cir. 2004) by noting that it was proper for the furnisher to rely on its earlier investigation in which it had gone outside its own records to investigate the allegations contained in the CRA dispute notice: "*Johnson* does not indicate that a furnisher has an obligation to repeat an earlier investigation, the record of which is in the furnisher's records.")

Case No. 1:15-CV-1670
Gwin, J.

told Defendant SPS that Plaintiff had disputed whether the mortgage was hers. Each of these disputes triggered Defendant's duty to make "reasonable investigation" to confirm that Plaintiff was the debtor.[58] Defendant says that in each case it properly confirmed that Forgues was the mortgage debtor.

Plaintiff does not dispute Defendant's description of the investigation process. In fact, Plaintiff agrees that "in each investigation, SPS determined that the Plaintiff's information matched the information in the system and the account was not a fraudulent account opened by somebody other than Plaintiff. Plaintiff further agrees that, SPS then advised each credit reporting agency (CRA) of the results of their initial investigation."[59]

Plaintiff does not argue that SPS's record searches to verify Plaintiff's identity were inadequate or unreasonable. The Court agrees that Defendant's investigations were reasonable under the circumstances.[60] Defendant SPS reviewed underlying documents, and confirmed Plaintiff Forgues' identity as the debtor.[61] Defendant SPS also contacted Plaintiff, and offered additional resources and a "fraud kit" if Plaintiff believed she was mistakenly listed on the mortgage.[62] Forgues did not use this option.

Instead, Plaintiff raises two arguments to attempt to defeat summary judgment on this claim. The first is that even if the investigation as to Plaintiff's identity was sufficient, SPS entirely failed to reasonably investigate whether the mortgage was an "account."[63] The second argument

---

[58] *See* Doc. 43 at 3-8; 16-17; Doc. 43-1.
[59] Doc. 49 at 8-9.
[60] Defendant provides ample evidence as to their investigatory procedures, none of which is rebutted by Plaintiff. Doc. 43 at 3-8; 16-17; Doc. 43-1. The Court truncates its review of these procedures in light of Plaintiff's agreement with Defendant's description.
[61] Doc. 43-1 at ¶¶ 13-32.
[62] *Id.* at ¶ 19.
[63] *Id.* at 9 ("The problem is, Defendant SPS's Memorandum and Ms. Weinberger's Declarations are replete with the term 'account' in connection with furnishing information to CRAs and conducting investigations under the applicable provisions of the FCRA are not accounts as narrowly defined under the FCRA.")

-15-

Case No. 1:15-CV-1670
Gwin, J.

is that Plaintiff also initiated a May/June dispute with *Experian* (as opposed to Equifax and Trans Union), which Defendant denies. Plaintiff argues that it has put forward enough evidence of this additional dispute to defeat summary judgment on this claim. Both arguments fail.

As discussed at length in this Court's April 15, 2016 opinion addressing the same issue, Plaintiff loses the argument that use of the term "account" allows her failure to investigate claim.[64] Plaintiff's arguments stem from the mistaken belief that use of the word account in *any* documents related to a credit report is necessarily the same as the statutory definition of "account" in the Fair Credit Reporting Act. This is simply not the case. The word "account" takes on its standard meaning outside of the statute itself. There is no requirement that a line of credit, like a mortgage, be an "account" as defined in the FCRA to be furnished to a CRA and listed on a credit report. Thus, there is no requirement to investigate, reasonably or not, whether the line of credit is an "account" as defined in the FCRA.

Plaintiff's final claim is that there is a sixth credit dispute in addition to the five the parties agree upon: a May dispute initiated by Experian. Defendant has averred that it did not receive a dispute from Experian in May 2015.[65] Plaintiff attempts to defeat this by attaching two documents from Plaintiff's Experian account.[66] Defendant disputes that these documents are properly before this Court in its motion to strike. However, the point is moot because neither document is sufficient to meet the key inquiry triggering investigation obligations under 15 U.S.C. § 1681s-2(b): that SPS received notice from Experian regarding the dispute. Plaintiff's two documents merely go to

---

[64] Doc. 57.
[65] Doc. 43-1 at ¶ 21 ("The Loan Records reflect that SPS has no record of receiving a dispute from Experian in late May or early June of 2015. If one had been received, it would have been noted in the contact history, investigated and confirmed in the same manner that SPS investigated the Trans Union and Equifax disputes it did receive.")
[66] Doc. 50-2; Doc. 50-3.

Case No. 1:15-CV-1670
Gwin, J.

conversations between Experian and Plaintiff, not to communications between SPS and Experian. This is not sufficient to demonstrate any obligations under Section 1681s-2(b).

In the absence of any evidence that Defendant's investigation was anything other than reasonable under the circumstances, Plaintiff has no grounds for relief under Section 1681s-2(b).[67] The Court **GRANTS** summary judgment to Defendant on this claim

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion to strike. The Court **GRANTS** Defendant's motion for summary judgment.

IT IS SO ORDERED.

Dated: April 20, 2016                      *s/        James S. Gwin*
                                                                                  JAMES S. GWIN
                                                                                    UNITED STATES DISTRICT JUDGE

---

[67] Plaintiff points out a few ancillary disputes that are irrelevant and do not preclude the Court granting summary judgment to Defendant on Plaintiff's claims. First, Plaintiff emphasizes that she promised "to pay, not repay, a loan to Chase." Doc. 49 at 1. Plaintiff fails to highlight what impact this could have on the case, and the Court sees none. Plaintiff then disputes SPS's "contention that it is a 'servicer' on behalf of a purported mortgagee," because SPS is a debt collector instead. *Id.* at 1-2. A debt collector is a term of art used in the Fair Debt Collection Practices Act to differentiate those covered by the act (debt collectors) from those who are not (creditors). SPS does not dispute that it is a debt collector covered by the act, rather than a creditor. There is no reason SPS could not also be described as a servicer in another context. Lastly, Plaintiff raises disputes as to their outstanding 1692e(8) claims. However, these claims have been addressed in the Court's April 15, 2016 opinion. Doc. 57. There are no pending 1692e(8) claims in this case.

-17-